USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
NELSON CENTENO, :
:
                       Plaintiff, :
: 16-CV-2393 (VSB)
      - against - :
: **OPINION & ORDER**
:
CITY OF NEW YORK, et al., :
:
                     Defendants. :
:
------------------------------------------------------------X

Appearances:

John Joseph Meehan
Jon Louis Norinsberg
Law Offices of Jon L. Norinsberg
New York, New York
*Counsel for Plaintiff*

Stephen M. Suhovsky
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Nelson Centeno filed his complaint on March 31, 2016, alleging claims under 42 U.S.C. § 1983 against the City of New York and several employees of the New York Police Department for false arrest, excessive force, failure to intervene, and municipal liability, as well as various state law claims. Before me is Defendants' motion for summary judgment on each of the causes of action in Plaintiff's complaint. (Doc. 52.) In his response to the motion, Plaintiff withdrew his false arrest and municipal liability claims, along with his state law claim for negligent hiring, training, supervision, and retention, and further represented that he does not oppose the dismissal of Defendants the City of New York and Yatfai Ng; therefore, these claims

and Defendants are DISMISSED. Defendants John Doe Police Officers Nos. 1–10 are also DISMISSED because Plaintiff—after a full and fair opportunity for discovery—did not identify them by name or otherwise. Because there are issues of material fact concerning Plaintiff's excessive force, failure to intervene, and state law assault and battery claims, Defendants' motion for summary judgment as to those claims is DENIED. Finally, because Plaintiff's intentional infliction of emotional distress claim is duplicative of his other surviving claims, Defendants' motion concerning that claim is GRANTED.

## I. **Background**[1]

On November 11, 2015, while walking to the barbershop where he was employed, Plaintiff Nelson Centeno began to feel "woozy [and] dizzy" and leaned on a pole for support. (Pl.'s 56.1 ¶¶ 7–8).[2] At approximately 5:00 p.m., Plaintiff—who has a history of epileptic seizures—suffered a seizure on Avenue C near the intersection of East 8th Street in Manhattan. (*Id.* ¶¶ 7, 9.) During the seizure, Plaintiff lost consciousness. (*Id.* ¶ 28.) A bystander discovered him lying face down on the ground and flagged down a passing police vehicle occupied by Defendant Officer Stephanie Vacchio and her partner Defendant Officer William Carey. (*Id.* ¶¶ 26, 27.) When Officers Vacchio and Carey approached Plaintiff, he was snoring. (Vacchio Dep. 26:17-19.)[3] The Officers attempted to wake him, first by tapping his arms and then by rolling him over. (Pl.'s 56.1 ¶¶ 30–31.) Plaintiff awoke and rose to his feet but seemed "dazed," (Vacchio Dep. 28:13-24), and looked as though he might fall over, (*id.* at 29:13-16). The

---

[1] Unless otherwise noted, the facts referenced in this section are undisputed.

[2] "Pl.'s 56.1" refers to Plaintiff's Amended Response to Defendant[s]' Local Rule 56.1(b) Statement, filed June 19, 2018, (Doc. 69), which contains both Defendants' assertions of fact and Plaintiff's responses.

[3] "Vacchio Dep." refers to the August 17, 2017 deposition of Officer Stephanie Vacchio, excerpts of which are attached as Exhibit G to the Declaration of Jon L. Norinsberg, Esq. ("Norinsberg Declaration"), filed June 15, 2018. (Doc. 65-7.)

Officers attempted to communicate with Plaintiff but he remained unresponsive. (Pl.'s 56.1 ¶ 34.) Shortly thereafter, Plaintiff began to remove his pants. (*Id.* ¶ 35.) Officers Carey and Vacchio prevented him from doing so and Plaintiff attempted to shrug off the Officers but was very unsteady on his feet. (*Id.* ¶ 37.) Both Officers Vacchio and Carey suspected that Plaintiff might have been under the influence of narcotics, specifically the powerful synthetic drug K2. (Vacchio Dep. 32:15-24; Carey Dep. 28:8-16.)[4] Currently, there is no dispute that Plaintiff was, in fact, suffering from an epileptic seizure. (Pl.'s Opp. 2; Defs.' Reply 1.)[5]

The parties dispute what happened next. Defendants contend that Plaintiff became violent and attempted to punch Officer Vacchio in the face. (Defs.' 56.1 ¶ 39.)[6] The Officers then supposedly struggled to subdue Plaintiff, (*id.* ¶ 41), and in the struggle, Plaintiff repeatedly banged his head against a tree, (*id.* ¶¶ 41, 50), the glass window of a storefront, (*id.* ¶¶ 55–56), and/or the ground, (*id.* ¶ 59). Both Officers Carey and Vacchio testified to their belief that Plaintiff posed an "immediate threat of serious physical injury or death to himself or others." (*Id.* ¶¶ 70–71.)

Although Plaintiff has almost no memory of his encounter with Defendants, he does recall one or more Officers yelling at him to "get to the fucking ground" and then recalls hearing sirens. (Pl.'s 56.1 ¶¶ 81, 84.) Plaintiff's family members, including his wife and mother, have observed Plaintiff's seizures on multiple occasions and have never seen Plaintiff behave

---

[4] "Carey Dep." refers to the February 22, 2018 deposition of Officer William Carey, excerpts of which are attached as Exhibit H to the Norinsberg Declaration. (Doc. 65-8.)

[5] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed June 16, 2018, (Doc. 68). "Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure, filed June 29, 2018, (Doc. 70).

[6] "Defs.' 56.1" refers to Defendants' Statement Pursuant to Local Civil Rule 56.1, filed May 16, 2018, (Doc. 53). Citations only to "Defs.' 56.1" indicate that Plaintiff has disputed those allegations in his response to Defendants' 56.1 Statement, (*see* Doc. 69).

violently, either during or after a seizure. (Betancourt Dep. 76:15-21; DeLeon Dep. 28:13-15.)[7]

It is undisputed that at some point, Defendant Officer Harlyn Delossantos and his partner Defendant Detective Geneva Anderson arrived on the scene—they were across the street at PSA 4 and came outside after a civilian alerted them to an incident involving "two officers struggling with an individual." (Pl.'s 56.1 ¶¶ 45–46.) Officer Delossantos testified that he joined Officers Vacchio and Carey in attempting to subdue Plaintiff, (Delossantos Dep. 29:2-30:6),[8] while Detective Anderson focused primarily on controlling the crowd that had gathered, (Anderson Dep. 27:17-24).[9] After Plaintiff was restrained, Detective Anderson retrieved Plaintiff's cellular phone, located a phone number for Plaintiff's sister, Alexis DeLeon, and called her to inform her that Plaintiff had been found lying on the ground. (Pl.'s 56.1 ¶¶ 11, 60.) Ms. DeLeon informed Detective Anderson that Plaintiff had a history of seizures. (*Id.* ¶ 60.) Ms. DeLeon then contacted Christine Betancourt, Plaintiff's wife, who proceeded to Avenue C and East 8th Street. (*Id.* ¶¶ 12–14.) When Ms. Betancourt arrived, she saw Plaintiff lying face down on the ground with his hands in handcuffs. (*Id.* ¶ 14.) She also observed an Officer kneeling over Plaintiff as he lay on the ground, forcing his knee into Plaintiff's back. (Betancourt Dep. 98:16-19.)

Sometime later, Defendant Officer Yatfai Ng[10] arrived on the scene. Officer Ng accompanied Plaintiff and Ms. Betancourt in an ambulance to Mount Sinai Beth Israel Hospital.

---

[7] "Betancourt Dep." refers to the March 8, 2018 deposition of Plaintiff's wife, Christine Betancourt, excerpts of which are attached as Exhibit Z to the Norinsberg Declaration. (Doc. 65-26.) "DeLeon Dep." refers to the February 21, 2018 deposition of Plaintiff's mother, Carol DeLeon, excerpts of which are attached as Exhibit X to the Norinsberg Declaration. (Doc. 65-24.)

[8] "Delossantos Dep." refers to the July 25, 2017 deposition of Officer Harlyn Delossantos, excerpts of which are attached as Exhibit I to the Norinsberg Declaration. (Doc. 65-9.)

[9] "Anderson Dep." refers to the December 20, 2017 deposition of Detective Geneva Anderson, excerpts of which are attached as Exhibit J to the Norinsberg Declaration. (Doc. 65-10.) Additional excerpts from the deposition of Detective Anderson are attached as Exhibit G to the Declaration of Nana Sarpong, filed May 25, 2018. (Doc. 60-7.)

[10] Plaintiff's original complaint lists "John Ng" as a defendant, (Doc. 1, at 1), but his amended complaint replaces "John Ng" with "P.O. Yatfai Ng," (Doc. 38, at 1).

(Pl.'s 56.1 ¶ 68.) Plaintiff remained at Mount Sinai Beth Israel for seven days, until November 18, 2015. (Doc. 65-20.) Plaintiff suffered additional seizures in the ambulance on the way to the hospital and, at some point thereafter, suffered a minor heart attack and minor strokes. (Pl.'s 56.1 ¶ 74.) During his hospital stay, Plaintiff was intubated to assist his breathing, placed in a medically-induced coma, underwent extensive neuroimaging, and was diagnosed with various brain injuries, including swelling and multiple "hemorrhagic contusions." (*Id.* ¶ 82; Doc. 65-3; Doc. 65-20, at 20.) Photographs taken at the hospital following the incident, along with Plaintiff's hospital records, document that Plaintiff had large lacerations and bruises on his head, face, shoulders, knees, and wrists. (*See* Docs. 65-3, 65-4.) Plaintiff was not charged with any offense in relation to the November 11, 2015 incident.

## II.  Procedural History

Plaintiff filed his original complaint in this action on March 31, 2016, (Doc. 1); he filed an amended complaint on March 5, 2018, (Doc. 38). The amended complaint alleges claims against the City of New York, as well as Officers Carey, Vacchio, Delossantos, Ng, and Detective Anderson, under 42 U.S.C. § 1983 for false arrest, excessive force, failure to intervene, and municipal liability. The amended complaint also includes state law claims for assault, battery, intentional infliction of emotional distress, and negligent hiring, training, supervision, and retention. (*See generally* Doc. 38.)

Plaintiff proffered reports from two medical experts, neuroradiologist Robert Peyster, M.D., and epilepsy and brain trauma specialist David Anschel, M.D. (Docs. 65-1, 65-2.) Defendants did not retain any experts, or otherwise submit evidence to rebut Plaintiff's experts. However, at an April 13, 2018 conference following the close of all discovery, Defendants

5

requested leave to engage their own medical experts. (4/13/18 Tr. 3:16-17.)[11] Because the deadline for expert discovery had "long since passed," (*id.* at 4:1-2), I directed Defendants to submit a letter setting forth "good cause" for their belated request for experts, (*id.* at 4:3-12). No such letter was ever filed.

On May 16, 2018, Defendants filed their motion for summary judgment, (Doc. 52), with a memorandum of law, (Doc. 55), and a declaration attaching exhibits, (Doc. 60), in support of the motion, as well as a Rule 56.1 Statement, (Doc. 53). On June 15, 2018, Plaintiff filed a memorandum of law in opposition, (Doc. 68), with a Counterstatement to Defendants' Rule 56.1 Statement, (Doc. 69), and a declaration attaching exhibits, (Doc. 65). On June 29, 2018, Defendants filed a reply memorandum of law in further support of their motion. (Doc. 70.)

### III.  Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at

---

[11] "4/13/18 Tr." refers to the transcript of the post-discovery conference held on April 13, 2018, (Doc. 58).

6

256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV. Discussion

Defendants move for summary judgment on each of Plaintiff's claims. As noted, in his opposition to Defendants' motion, Plaintiff agreed to withdraw his § 1983 claims for false arrest

7

and municipal liability, as well as his state law claim for negligent hiring, training, supervision, and retention. (Pl.'s Opp. 28 n.4.) Plaintiff has also agreed to voluntarily dismiss all claims against Officer Ng "since [Ng] had no involvement in the use of force against Plaintiff, and he came to the scene too late to prevent the use of excessive force by the other officers present." (*Id.*) The analysis that follows is therefore limited to Plaintiff's remaining claims against the remaining Defendants (Officers Carey, Vacchio, Delossantos, and Detective Anderson)[12]—that is, Plaintiff's § 1983 claims for excessive force and failure to intervene, as well as claims under New York law for assault, battery, and intentional infliction of emotional distress.

### A. *Section 1983 Claims*

#### 1. **Excessive Force**

Having reviewed the parties' submissions, including their Rule 56.1 Statements and the evidence provided, I find that questions of material fact preclude summary judgment on Plaintiff's excessive force claim. Among other things, there is a dispute as to the extent of the force used by Defendants and the extent to which Plaintiff resisted Defendants' efforts to subdue him. There is also a dispute regarding whether Defendants caused Plaintiff's injuries or whether and/or to what extent those injuries were self-inflicted, given Plaintiff's seizure and his confused and disoriented mental state in the aftermath of the seizure.

##### a. Applicable Law

The Supreme Court has held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free

---

[12] In addition to the named Officers, Plaintiff also alleges claims against John Doe Police Officers Nos. 1–10. Plaintiff, however, does not mention the John Doe Defendants in his summary judgment briefing. Because Plaintiff has been unable to identify the John Doe Police Officers after a full and fair opportunity for discovery, Plaintiff's claims against the John Doe Defendants fail as a matter of law. *See Caravalho v. City of New York*, No. 13-cv-4174 (PKC)(MHD), 2016 WL 1274575, at *11 (S.D.N.Y. Mar. 31, 2016) (dismissing claims against John Doe Officers on summary judgment after plaintiffs were unable to discern their identities through discovery).

citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). "[L]aw enforcement officers violate the Fourth Amendment if the amount of force they use is objectively unreasonable in light of the facts and circumstances confronting them." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (internal quotation marks omitted). This inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Whether or not the force applied was reasonable depends on "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

A successful § 1983 claim requires the plaintiff to establish that the individual defendant was personally involved in the alleged misconduct. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). A police officer is personally involved in the use of excessive force if the officer "either directly participates in an assault, or is present and has sufficient time to intervene and prevent it, but fails to do so." *Ortiz v. City of New York*, No. 15cv2206(DLC), 2016 WL 7009059, at *2 (S.D.N.Y. Nov. 30, 2016) (citing *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016)). However, "[t]his does not mean that Section 1983 offers no protection to a plaintiff who cannot present to the jury eyewitness testimony or other direct evidence" of the alleged constitutional violations. *Medina v. Donaldson*, No. 10 Civ. 5922(VMS), 2014 WL 1010951, at *7 (E.D.N.Y. Mar. 14, 2014). Rather, "[a] jury is permitted to infer a defendant's involvement in use of excessive force based on circumstantial evidence" alone. *Jackson v. Tellado*, 236 F. Supp. 3d 636, 666 (E.D.N.Y. 2017); *see also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1184 (2d Cir.

9

1992) ("[I]n any lawsuit, the plaintiff may prove his case by direct *or* circumstantial evidence." (emphasis in original) (internal quotation marks omitted)).

Absent direct evidence, a jury may still find for the plaintiff on a theory of direct participation if "there is sufficient circumstantial evidence from which the trier of fact could make reasonable conclusions concerning who, if anyone, struck [the] Plaintiff." *Lasher v. City of Schenectady*, No. 02-CV-1395, 2004 WL 1732006, at *6–7 (N.D.N.Y. Aug. 3, 2004); *see also Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297–98 (S.D.N.Y. 2009) (where plaintiff could not identify which officers allegedly subjected her to excessive force, her testimony and the undisputed presence of defendant officers at the scene were sufficient "to present a genuine issue of material fact as to whether each of the individual officers was personally involved in using or permitting the use of the alleged excessive force").

b. Application

Here, Plaintiff has offered significant circumstantial evidence that he was subjected to an objectively unreasonable amount of force by one or more Defendants. First, Plaintiff has submitted reports from two medical experts, neuroradiologist Robert Peyster, M.D., and epilepsy and brain trauma specialist David Anschel, M.D., both of whom have opined that the injuries Plaintiff sustained on November 11, 2015 are not consistent with injuries typically sustained during or immediately following an epileptic seizure.[13] Dr. Peyster, the Chief of the

---

[13] In their reply brief, Defendants contend—for the first time—that the opinions of Plaintiff's medical experts are inadmissible under Federal Rule of Evidence 702. (*See* Defs.' Reply 4–11.) I decline to consider Defendants' challenge to Plaintiff's experts as "arguments raised for the first time in a reply memorandum are waived and need not be considered." *Tutor Time Learning Ctrs., LLC v. GKO Grp., Inc.*, No. 13 Civ. 2980(JMF), 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013); *see also Stoeckley v. Cty. of Nassau*, No. CV 15-514 (LDW) (AKT), 2015 WL 8484431, at *1 (E.D.N.Y. Dec. 9, 2015) ("[I]t is the law of the Second Circuit that courts are not to consider arguments raised for the first time in a reply." (citing *Mullins v. City of New York*, 653 F.3d 104, 118 n.2 (2d Cir. 2011))). Defendants had ample opportunity to challenge Plaintiff's experts; however, Defendants inexplicably declined to depose Plaintiff's experts, did not proffer any medical experts of their own, *see supra* Part II, and made no mention of Plaintiff's experts' reports in their opening summary judgment brief, despite having received copies of those reports approximately six months before they filed their motion for summary judgment. (Doc. 73, at 2–3.)

10

Neuroradiology Division at the State University of New York at Stony Brook, reviewed Plaintiff's head computed tomography ("CT") scans and brain magnetic resonance imaging ("MRI") scans taken both before and after the November 11, 2015 incident, and concluded that the imaging conducted after the incident "indicate[s] the result of multiple instances of blunt trauma to the face and head." ( Doc. 65-1, at 2.) Dr. Peyster further expressed his opinion that these injuries could not have been the result of Plaintiff's seizure, "even if [Plaintiff] fell to the ground and hit his head," (*id.*); Dr. Peyster explained that he has "evaluate[d] CT and MRI studies in thousands of patients evaluated following seizure and [has] *never* seen a single instance of intracranial hemorrhage, with hematoma limited to the scalp and facial tissues, as is present with Mr. Cent[e]no in this case." (*Id.*) Dr. Anschel, who is Board Certified in Neurology, Clinical Neurophysiology, and Epilepsy, also concluded that neuroimaging showed "evidence of traumatic brain injury," (Doc. 65-2, at 2), that was "unlikely to have been the result of an isolated fall to the ground from a standing position" during a seizure, (*id.* at 5). With respect to Defendants' testimony that after he regained consciousness, Plaintiff repeatedly attempted to bang his head against various surfaces, Dr. Anschel opined:

> The police officer's description of certain behaviors attributed to Mr. Cent[e]no during the incident are inconsistent with those of an individual who has just recovered from a seizure. While it would not be unusual for such a patient to be disoriented and resist efforts to be subdued, it would be highly unlikely that someone in a post-ictal state of confusion[] would engage in the repeated self-injuri[ou]s behavior of violently thrusting himself into a wall or tree.

(*Id.*) Defendants have not offered any evidence in the record to rebut Dr. Anschel's assessment.

---

Indeed, even if the law allowed me to consider Defendants' argument that the opinions of Plaintiff's medical experts are inadmissible under Rule 702, without the benefit of deposition testimony from the experts calling into question their expertise, methodology, and conclusions, Defendants would be unlikely to prevail on their argument that I should not consider Plaintiff's experts' reports in connection with the instant motion. However, to be clear, I am not making a finding at this juncture of the admissibility of testimony from Plaintiff's experts at trial. If Defendants wish to challenge the admissibility of Plaintiff's experts prior to trial, they may do so in a properly filed motion *in limine*, thereby providing Plaintiff the opportunity to respond to their arguments.

11

In addition to Plaintiff's expert reports, which call into question Defendants' description of the November 11, 2015 incident, Plaintiff identified several other pieces of circumstantial evidence to support his excessive force claim. First, Plaintiff submitted extensive documentation confirming that he sustained serious injuries to his head, face, arms, and legs on November 11, 2015. This documentation includes both photographs, (Doc. 65-3), and medical records, (Doc. 65-4). Among those medical records is a discharge summary from Mount Sinai Beth Israel Hospital, which reflects, among other things, that Plaintiff was hospitalized for seven days following the incident. (Doc. 65-20.)

Plaintiff's wife, Christine Betancourt, also observed Defendants using force against Plaintiff when she arrived on the scene, even though by that point Plaintiff had been handcuffed and was lying on the ground. (*See* Betancourt Dep. 98:16-19 (describing having witnessed an Officer pressing his knees into Plaintiff's back).) Defendants similarly acknowledged using at least some amount of force against Plaintiff. (*See* Carey Dep. 54:11-22 (stating that he "stuck his foot out to trip Mr. Centeno over it").) Officers Carey and Vacchio further acknowledged that when they came upon Plaintiff, they assumed that he was "under the influence" of narcotics because he was acting "[v]ery similar" to how a person who had used the synthetic drug K2 might act. (Vacchio Dep. 32:15-24; *see also* Carey Dep. 28:8-16; Betancourt Dep. 47:3-5 (explaining that a female detective at the scene informed her that the Officers believed Plaintiff was "on K2").) A reasonable juror could find that Defendants' incorrect assumption that Plaintiff was under the influence of illegal drugs prompted Defendants to use more force against Plaintiff than they would have used had they known that Plaintiff was in fact experiencing a medical emergency.[14]

---

[14] At trial, Defendants may succeed in demonstrating that their incorrect assumption that Plaintiff was under the influence of narcotics was nevertheless reasonable under the circumstances; however, I find that there are sufficient

12

In addition, Plaintiff's relatives—who have personally witnessed his epileptic seizures in the past—testified that while Plaintiff has frequently experienced seizures, he has no history of behaving violently during or after a seizure. Ms. Betancourt explained that when Plaintiff wakes up from a seizure, "[h]e just wants to sleep" and has never "been violent" or "tried to fight" her following a seizure. (Betancourt Dep. 76:15-21.) Similarly, Plaintiff's mother, Carol DeLeon, noted that Plaintiff "mov[es] around very little" during a seizure. (DeLeon Dep. 28:13-15.)

Finally, Plaintiff identified inconsistencies in Defendants' testimony concerning the sequence of events and the cause of Plaintiff's injuries. For instance, Officer Delossantos testified that, after he had been brought to the ground, Plaintiff repeatedly banged his head against the ground, (Delossantos Dep. 33:11-14); however, Detective Anderson described Plaintiff as "subdued" and "very quiet" when he was on the ground, and stated that she never observed Plaintiff bang his head into the ground, (Anderson Dep. 32:9-18). In addition, although Officer Delossantos testified that he observed Plaintiff bang his head against the glass window of a storefront several times, Detective Anderson testified that Defendants successfully prevented Plaintiff from doing so. (*Compare* Delossantos Dep. 29:10-30:2, *with* Anderson Dep. 20:11-17.) The remaining contradictions between Defendants' respective versions of events are not as glaring as Plaintiff suggests, (*see* Pl.'s Opp. 15–19): several of the examples Plaintiff cites involve one Officer testifying that he or she witnessed Plaintiff engaging in certain conduct while other Officers testified merely that they did not observe that conduct. (*Compare, e.g.*, Carey Dep. 38:4-6 (recalling that Plaintiff hit his head against a tree), *with* Anderson Dep. 47:20-22 (explaining that she did not see Plaintiff do so); Delossantos Dep. 33:13-14 ("Nelson Centeno started banging his head against the ground."), *with* Vacchio Dep. 55:20-22 (explaining that she

---

facts in dispute to prevent me from drawing that conclusion as a matter of law.

13

did not observe that behavior), *and* Carey Dep. 32:25-33:3 (same); *compare also* Delossantos Dep. 29:10-30:2 (stating that Plaintiff "started trying to head-butt the window" and succeeded in doing so), *with* Carey Dep. 38:16-18 (confirming he had no recollection of Plaintiff headbutting a window).) Such discrepancies could be attributable to Defendants observing or recalling different aspects of the incident. Nevertheless, at this stage of the litigation, these inconsistencies provide additional—if not overwhelming—circumstantial evidence in support of Plaintiff's narrative. *Cf. Medina*, 2014 WL 1010951, at *8 (concluding that inconsistencies in the testimony of three officers precluded judgment as a matter of law). How much weight this evidence should be given is an issue for the jury to resolve.

Ultimately, the record—when viewed in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor—permits an inference that one or more Defendants used constitutionally excessive force against Plaintiff. A reasonable juror may well find that Defendants—who incorrectly presumed that Plaintiff was under the influence of powerful narcotics—used an objectively unreasonable amount of force in subduing an individual with no history of violent behavior during or after a seizure, thereby seriously injuring Plaintiff. On the other hand, a reasonable juror might conclude that Plaintiff—in the course of emerging from a seizure—resisted Defendants and/or became violent and that Defendants simply did their best to address a "tense, rapidly evolving" situation, (Defs.' Reply 13 n.5), and prevent Plaintiff from injuring himself or others. However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. Having found that triable questions of fact exist, it is the jury's role to make credibility determinations and decide whether the use of force alleged was objectively unreasonable. *See De Michele v. City of New York*, No.

09 Civ. 9334(PGG), 2012 WL 4354763, at *18 (S.D.N.Y. Sept. 24, 2012).

Plaintiff's inability to identify which of the Defendant Officers caused his injuries is not fatal to his claims. A defendant is "personally involved" in the use of excessive force where he either directly participated in the infraction or failed to intervene on a plaintiff's behalf where there was a realistic opportunity to prevent the harm from occurring. *Caravalho v. City of New York*, No. 13-cv-4174 (PKC)(MHD), 2016 WL 1274575, at *10 (S.D.N.Y. Mar. 31, 2016). Plaintiff therefore "'need not establish who, among a group of officers, directly participated in the attack and who failed to intervene,' as long as 'there was a realistic opportunity to intervene to prevent the harm from occurring.'" *De Michele*, 2012 WL 4354763, at *17 (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), and *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Here, it is undisputed that all four Defendants were present during the altercation with Plaintiff and at least three of the four Defendants acknowledge making physical contact with Plaintiff. *See Skorupski v. Suffolk Cty.*, 652 F. Supp. 690, 694 (E.D.N.Y. 1987) (denying summary judgment on excessive force claim where plaintiff could not identify who struck him but where defendants were admittedly present during the arrest and two of those defendants admitted to having physical contact with plaintiff). Officers Carey and Vacchio, who were the first to arrive on the scene, both testified that they were involved in physically restraining Plaintiff. (*See* Carey Dep. 31:2-6 (noting that he "struggl[ed] back and forth" with Plaintiff); Vacchio Dep. 43:23-25.) Although Officer Delossantos and Detective Anderson arrived on the scene sometime later, Officer Delossantos testified that he was also involved in subduing Plaintiff. (*See* Delossantos Dep. 29:2-4 (recalling that he had "grabbed onto" Plaintiff's arm).) Plaintiff's claims against Defendant Anderson appear to be the most tenuous, as the record

15

reflects that Detective Anderson was primarily responsible for crowd control and contacting Plaintiff's family members. (*See* Anderson Dep. 31:3-4, 31:21-32:8.) However, Detective Anderson did acknowledge that she was present during the struggle between Plaintiff and the other Defendants, (*see id.* at 27:1-13); therefore, while Plaintiff has admittedly amassed a "thin factual [record]" against Detective Anderson, I find that there is sufficient evidence to permit a jury to determine "whether or not [Anderson] failed to intercede . . . or was personally involved in some other fashion." *Campbell v. City of New York*, No. 06 CV 5743 (HB), 2010 WL 2720589, at *9 (S.D.N.Y. June 30, 2010).

This case presents a unique factual scenario since Plaintiff has almost no recollection of his encounter with the police. However, summary judgment has been denied under similar circumstances, s*ee McMahon v. Fura*, No. 5:10-CV-1063 (GHL), 2011 WL 6739517, at *9 (N.D.N.Y. Dec. 23, 2011) (denying summary judgment on excessive force claim even though "Plaintiff ha[d] no memory of his encounter with the police" where it was undisputed that defendant officer used some amount of force in apprehending plaintiff); *see also De Michele*, 2012 WL 4354763, at *17 (denying summary judgment on excessive force claim where it was "undisputed that all four officers . . . were present at DeMichele's arrest at the time of the alleged use of excessive force," even though plaintiff could "not say for certain which officers allegedly assaulted him and in what way"), and for the foregoing reasons, it must also be denied here.

### 2. Failure to Intervene

As noted above, a police officer may be held liable for the use of excessive force not only where that officer himself employs constitutionally excessive force but also where the officer "is present and has sufficient time to intervene and prevent [the harm], but fails to do so." *Ortiz*, 2016 WL 7009059, at *2. Plaintiff, however, has also alleged an independent claim against

16

Defendants for failure to intervene. (Doc. 38, ¶¶ 29–35.) "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Branen*, 17 F.3d at 557. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* For the reasons discussed above, I find that Plaintiff has put forth sufficient evidence to create a genuine issue of material fact as to whether one or more Defendants had a realistic opportunity to intervene to prevent the other Defendants from engaging in excessive use of force, but failed to do so.

Defendants' motion for summary judgment on both Plaintiff's excessive force claim and his failure to intervene claim is therefore DENIED.[15]

### B. *State Law Claims*

Plaintiff also opposes Defendants' motion for summary judgment with regard to his state law claims for assault and battery, as well as intentional infliction of emotional distress.

---

[15] Defendants contend that, at a minimum, they are entitled to qualified immunity on Plaintiff's § 1983 claims for excessive force and failure to intervene. (Defs.' Br. 21–23.) ("Defs.' Br." refers to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed May 17, 2018, (Doc. 55).) However, "summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain." *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003) (internal quotation marks omitted); *see also Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded."). Because I have concluded that genuine factual disputes persist regarding the extent and the reasonableness of Defendants' use of force, it would be improper to grant summary judgment based on qualified immunity. *See Quon v. City of New York*, No. 14-cv-9909 (RJS), 2016 WL 4411416, at *4–5 (S.D.N.Y. Aug. 18, 2016) (denying summary judgment and holding that "a jury must determine what transpired between the officers and [p]laintiff before the Court can make a determination as to qualified immunity").

### 1. Assault and Battery

The factual disputes that preclude the grant of summary judgment on Plaintiff's excessive force claim also preclude summary judgment on Plaintiff's state law claims for assault and battery. "[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim." *Pierre-Antoine v. City of New York*, No. 04 Civ. 6987(GEL), 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) (internal quotation marks omitted). Thus, because there is a genuine issue of material fact concerning whether Defendants used excessive force against Plaintiff, there is likewise a genuine issue of material fact as to whether Defendants committed assault and battery against Plaintiff. *See Caravalho*, 2016 WL 1274575, at *22 (denying summary judgment on plaintiff's assault and battery claims for the reasons it had denied summary judgment on plaintiff's excessive force claim "[b]ecause the essential elements of a section 1983 claim for excessive force and a claim for assault and battery under New York law are 'substantially identical'" (quoting *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991)).

### 2. Intentional Infliction of Emotional Distress

Plaintiff's state law claim for intentional infliction of emotional distress ("IIED") must be dismissed. "[S]tate courts and federal district courts applying New York law have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory," *Brewton v. City of New York*, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008), and have routinely concluded that "IIED claims that are duplicative of other tort claims should therefore be dismissed," *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 214 (E.D.N.Y. 2014) (citing *Lian v. Sedgwick James of N.Y., Inc.*, 992 F. Supp. 644, 651 (S.D.N.Y.1998)). While a limited number of courts have upheld IIED claims involving

"elements that d[o] not entirely overlap" with other tort claims at issue in the same lawsuit, *see Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996), the Second Circuit has expressed doubt as to the propriety of that approach. *See id.* at 792 (noting the court's "uncertain[ty]" as to whether "state courts would entertain an emotional distress claim in addition to the other torts alleged in this case," as the district court had done, but declining to resolve the issue).

I am persuaded by the general consensus among courts in this district that where an IIED claim is predicated on the very same conduct underlying a plaintiff's other tort claims, dismissal is appropriate. *See, e.g.*, *Caravalho*, 2016 WL 1274575, at *23 (dismissing IIED claim where it was "encompassed entirely within [plaintiff's] state law claim for assault and battery"); *Poulos v. City of New York*, No. 14CV3023-LTS-HBP, 2015 WL 5707496, at *10 (S.D.N.Y. Sept. 29, 2015) (dismissing IIED claim "based on the same conduct that constitute[d] the basis for Plaintiff's state law claims for harassment, intimidation, assault and battery, failure to protect, neglect and failure to provide medical treatment, and negligence"); *see also Blot v. Town of Colonie*, No. 1:14-CV-0991 (GTS/CFH), 2017 WL 61943, at *21 (N.D.N.Y. Jan. 5, 2017) (dismissing claims for IIED and negligent infliction of emotional dismiss on the ground that "the claim[s] [we]re premised on the same conduct giving rise to [plaintiff's] federal excessive force claim"). Because there are no allegations that Defendants engaged "in any other potentially tortious conduct against [Plaintiff] . . . which is not subsumed by [Plaintiff']s assault and battery or excessive force claims," *Caravalho*, 2016 WL 1274575, at *23, Plaintiff's IIED claim must be dismissed as duplicative.

### V. Conclusion

For the foregoing reasons, Plaintiff's § 1983 claims for false arrest and municipal liability, as well as his state law claim for negligent hiring, training, supervision, and retention are DISMISSED. Defendants City of New York, Yatfai Ng, and John Doe Police Officers Nos. 1–10 are also DISMISSED. Summary judgment as to Plaintiff's excessive force, failure to intervene, and assault and battery claims is DENIED, and summary judgment as to Plaintiff's claim for intentional infliction of emotional distress is GRANTED.

The parties are instructed to appear for a status conference on May 10, 2019 at 11:30 a.m., and to be prepared to discuss next steps in the case, including dates for trial and deadlines for the pretrial submissions required by my Individual Rules & Practices in Civil Cases, Rule 6.

The Clerk of Court is respectfully directed to terminate the open motion at Docket Number 52.

SO ORDERED.

Dated: March 27, 2019
      New York, New York

Vernon S. Broderick
United States District Judge